IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHINYERE U. NWOKE, | ) |
| | ) |
| Plaintiff, | ) No. 06 C 0030 |
| | ) |
| v. | ) Honorable Charles R. Norgle |
| | ) |
| COUNTRYWIDE HOME LOANS, INC., | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendant's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, Defendant's Motion is granted.

I. BACKGROUND[1]

A. Facts

Plaintiff Chinyere Nwoke ("Nwoke") is a citizen of Illinois. Defendant Countrywide Home Loans ("Countrywide") is a mortgage lender incorporated in New York with its principle place of business in Calabasas, California. On July 21, 2003, Nwoke refinanced a home mortgage loan with Countrywide and continues to be serviced by Countrywide as of the commencement of this action. Nwoke has never missed a mortgage payment, and her account has never been in default.

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements to the extent that they comply with Local Rule 56.1 and notes disputed facts within the text.

1

On December 28, 2004 Nwoke submitted two checks to Countrywide for her January 2005 mortgage payment, $751.56 for principle and interest and $420 for her escrow account, respectively (totaling $1,181.56). However, Countrywide misapplied these checks to Nwoke's account as $484.94 and $163.16, respectively, totaling $648.10. Nwoke subsequently stopped receiving billing statements from Countrywide and was unaware of this misapplication until October 2005. Meanwhile, Nwoke continued to send monthly mortgage payments to Countrywide.

On October 4, 2005 Countrywide sent a letter to Nwoke seeking $95.65 in past due late charges, which were related to the earlier misapplication of her payments. In a subsequent letter dated October 17, 2005, Countrywide notified Nwoke that her home mortgage loan was in default and advised her that a failure to cure the default may result in foreclosure. Unable to refinance the loan, Nwoke requested a copy of her loan history from Countrywide on October 26, 2005. On November 1, 2005, Nwoke and another mortgage lender, together, contacted Countrywide with regard to the misapplied loan payments. Nwoke also sent copies of the misapplied checks to Countrywide.

Countrywide then issued a letter to Nwoke on November 2, 2005 advising her that she could "disregard any delinquency notices" and that "no delinquent credit reporting will occur." That same day, Countrywide advised Nwoke in a separate letter that correction reports had been submitted to the major credit reporting bureaus and that "it takes an average of 60 days for the credit reporting agencies to complete the submitted credit reporting adjustment." In a letter dated November 19, 2005, Countrywide informed Nwoke that a check would be returned to her in the amount of $325.53 for late fees inadvertently charged to her account due to the

misapplication of her payments. On November 29, 2005, Countrywide sent Nwoke the check for $325.53.

Relying on a credit report obtained from TransUnion, dated January 12, 2006, Countrywide asserts that Nwoke's credit was corrected as of January 2006. Nwoke denies that any correction was made by January 2006, and a separate credit report obtained from Experian shows a 60-day delinquency on her Countrywide mortgage loan as of January 16, 2006. Ostensibly, the correction reports that were issued on November 2, 2005 only corrected Nwoke's credit as it related to the period ranging from April to September 2005. That letter did not correct a 60-day delinquency report for the month of October 2005, which did not register on Countrywide's computers until November 8, 2005. On January 20, 2006, Countrywide sent a second set of correction reports to the credit reporting agencies addressing the October 2005 payment.

Monthly payments from Countrywide's customers are ordinarily received and processed in Countrywide's payment processing department within twenty-four hours of receipt. During processing, the pre-printed ink at the bottom of a payment coupon is read by Countrywide's processing equipment to ensure the accurate posting of the payments to the correct loan. If the coupon or check cannot be read by the processing equipment, the payment will be placed in an "exceptions queue" and reviewed by two individuals, again to ensure the accurate posting of payments. Notwithstanding these precautionary measures, Countrywide acknowledges that mistakes occasionally occur. Countrywide asserts that the misapplication of Nwoke's January 2005 payments was the result of an unintentional mistake. Nwoke contests this characterization and asserts the misapplication to be the result of wanton, if not intentional, conduct.

## B. Procedural History

On January 4, 2006 Nwoke filed her initial Complaint alleging false representations of her debt under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and common law negligence. Nwoke filed her Amended Complaint on February 11, 2006. Then, on December 7, 2006, Countrywide filed its Motion for Summary Judgment. Nwoke filed her Response on December 19, 2006, and Countrywide Replied on January 18, 2007. Defendant's Motion is fully briefed and before the court.

## II. DISCUSSION

## A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must take "a choice of inferences." See United States v. Diebold, Inc., 368 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S.

253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all reasonable inferences in a light most favorable to the nonmoving party. Alexander v. City of South Bend, 433 F.3d 550, 554 (7th Cir. 2006). The inferences construed in the nonmoving party's favor, however, must be drawn from specific facts identified in the record that support that party's position. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

**B. Local Rule 56.1 Statements**

With respect to local rules governing summary judgment, the Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance." Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 527 (7th Cir. 2000). Designed to conserve time and judicial resources, Local Rule 56.1 ("L.R. 56.1") assists the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." Id.

Accordingly, L.R. 56.1 sets forth a framework within which the parties must approach summary judgment motions and responses. L.R. 56.1(a)(3) requires the moving party to provide a "statement of material facts [consisting of short numbered paragraphs] as to which the moving party contends there is no genuine issue." Similarly, L.R. 56.1(b)(3)(b) requires the nonmoving party to provide a concise response to the movant's statement containing "a response to each

numbered paragraph in the moving party's statement, including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." In addition, L.R. 56.1(b)(3)(c) provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing part."

In general, L.R. 56.1 statements should contain only properly supported factual allegations and not legal conclusions. See Malec v. Sanford, 191 F.R.D. 581, 583-84 (N.D. Ill. 2000). A response to an L.R. 56.1 statement is not the appropriate vehicle for stating additional facts; "any additional facts that require denial of summary judgment" as properly supported by the record must be provided in a *separate* statement containing short numbered paragraphs, pursuant to L.R. 56.1(b)(3)(c). Cichon v. Exelon Generation Co., 401 F.3d 803, 809 (7th Cir. 2005); Malec, 191 F.R.D. at 584 (concluding that an L.R. 56.1(b)(3)(B) statement is the only acceptable means of presenting additional facts to the court).

Here, Nwoke has failed to comply with L.R. 56.1 despite being provided notice and a copy of the rule as well as an opportunity to file an additional response to Countrywide's L.R. 56.1(a)(3) statement. Contrary to L.R. 56.1(b), Nwoke's L.R. 56.1 filing, consisting of 29 paragraphs, appears to respond to the 29 paragraphs in Countrywide's Statement, but includes additional facts within the responses as well as impermissible legal conclusions and unsupported factual allegations.

While the court generally construes a *pro se* litigant's pleadings liberally, Nwoke's *pro se* status does not excuse her from the court's procedural requirements regarding summary judgment. See Greer v. Bd. of Educ. of the City of Chicago, 267 F.3d 723, 727 (7th Cir. 2001);

see also McNeil v. United States, 508 U.S. 106, 113 (1993) (stating that even *pro se* litigants must follow procedural rules in ordinary civil litigation).

Rather than discuss at length the individual paragraphs in Nwoke's L.R. 56.1 statement, the court will disregard any additional statements of fact contained in Nwoke's responses and draw only from the portions of the responses that are factually supported by the record.

## C. Countrywide's Motion for Summary Judgment

### *1. Nwoke's FDCPA Claims*

Nwoke alleges that Countrywide has violated her rights under the FDCPA by making false representations of her home mortgage payments and threatening to foreclose on her house. Pl.'s Comp., ¶ 1. While FDCPA aims to prevent abusive, deceptive and unfair practices in the collection of debts such as Nwoke alleges, the FDCPA draws a sharp distinction between creditors and debt collectors, regulating only the latter. 15 U.S.C. § 1692(e); Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003). Creditors are excluded from the statute, because they "generally are restrained by the desire to protect their good will when collecting past due accounts." Schlosser, 323 F.3d at 536 (quoting Sen. Rep. No. 95-382, at 2 (1977).

For the purposes of the FDCPA, the terms "creditor" and "debt collector" are mutually exclusive. Id. The FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." § 1692a(4). The FDCPA further defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. This term does not include (a) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor . . . .

7

§ 1692a(6). Consistent with the plain language of the statute, the Seventh Circuit has repeatedly recognized that a creditor collecting its own debt is not a "debt collector." Aubert v. Am. Gen. Fin., 137 F.3d 976, 978 (7th Cir. 1998). The exception to this rule is a "creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." § 1692a(6); see Catencamp v. Cendant Timeshare Resort Group -- Consumer Finance, Inc., 471 F.3d 780, 781-82 (7th Cir. 2006) (treating a creditor as a debt collector under FDCPA, because creditor used an alias trade name in collecting debt and represented itself in a dunning letter to be someone other than a creditor).

Here, Countrywide serviced Nwoke's home mortgage and was the lender under the terms of the mortgage. Notwithstanding, Nwoke asserts that Countrywide is a "debt collector" and points to the October 4, 2005 letter in which Countrywide stated: "Please be advised that this communication is from a debt collector. Countrywide is a debt collector." According to Countrywide, these statements are included as boilerplate on stock notices when it begins servicing a mortgage already in default that it received from another company. Under those circumstances, Countrywide would be "debt collector" under § 1692a(6) and would be required to identify itself as such under § 1692e(11). See Alibrandi v. Fin. Outsourcing Servs., 333 F.3d 82, 88 (2d Cir. 2003) (holding that a collection agency which received a loan that was already in default was a "debt collector" and was required to include its correspondence with the debtor the warnings required by the FDCPA).

The court, however, declines to take Countrywide's statements as an admission that it is a "debt collector," because Countrywide, in attempting to collect on its own debt, does not fit the statutory definition of a "debt collector." See Prince v. NCO Fin. Servs., 346 F. Supp. 2d 744,

751 (D. Pa. 2004). Moreover, this is not a case involving a creditor "using a name other than his own." Both Countrywide's letterhead and its statements clearly identify the October 4, 2005 letter as originating from Countrywide. Accordingly, the court finds that Defendant is not a "debt collector" in the language of the FDCPA. Because Countrywide is not subject to the FDCPA, the court grants Countrywide's Motion for Summary Judgment with respect Nwoke's FDCPA claims.

### 2. *Nwoke's State Law Claims*

Nwoke's Complaint recites such language as "wanton" and "grossly negligent," and may be liberally construed as asserting common law tort claims. Comp., ¶ 2,; see Haines v. Kerner, 404 U.S. 519, 520 (1972); Donald v. Cook County Sheriff's Dep't, 95 F.3d 548, 555 (7th Cir. 1996) ("It is, by now, axiomatic that district courts have a special responsibility to construe *pro se* complaints liberally . . . ."). As a preliminary matter, however, any state law negligence claim would be preempted by the Fair Credit Reporting Act ("FCRA"), which states:

> Except as provided in sections 616 and 617 [15 USCS §§ 1681n and 1681o], no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 609, 610, or 615 [15 USCS § 1681g, 1681h, or 1681m], or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[,] except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

In order for Nwoke's negligence allegation to survive the summary judgment stage, she must allege "malice or willful intent to injure" her, rather than mere negligence. See Schaffner v. U.S. Bank N.A., No. 02 C 8062, 2004 U.S. Dist. LEXIS 6935, *5-6 (N.D. Ill. 2004) (dismissing defamation claim for failure to allege malice or willful intent). Under Illinois law,

9

"malice" in the context of negligence claims rises to a level higher than ordinary negligence on part with willfulness and wantonness. See Hukic v. Aurora Loan Servs., No. 05 C 4950, 2006 U.S. Dist. LEXIS 36892, *8-9 (N.D. Ill. May 22, 2006) (analyzing relationship between Section 1681h(e) and state common law claims); Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 931 (N.D. Ill. 2000) (same) (citing Ziarko v. Soo Line R.R. Co., 641 N.E.2d 402, 405 (Ill. 1994)).

Nwoke's negligence claim does not survive summary judgment, because Countrywide's conduct, as based on the facts before the court, may at most be described as a series of negligent errors. Despite the presence of precautionary measures to ensure the accuracy of posted payments, Countrywide misapplied two of Nwoke's checks. Upon being informed of the mistake, Countrywide promptly issued correction reports to the major credit bureaus. These reports, however, failed to correct a 60-day delinquency report that appeared on Countrywide's computers only a few days later. Upon discovering this additional delinquency report, Countrywide again promptly issued correction reports. Even drawing all reasonable inferences in the light most favorable to Plaintiff, there is no evidence in the record to suggest that Countrywide's conduct was anything more than negligent. While Nwoke need not produce the proverbial smoking gun, she may not rely on conclusory allegations alone to survive summary judgment. Thomas, 328 F.3d at 892-93. As a result, the court grants Countrywide's Motion for Summary Judgment with respect to Nwoke's state law claims.

## III. CONCLUSION

For the foregoing reasons, the court grants Countrywide's Motion for Summary Judgment with respect to both Nwoke's FDCPA claim and her state law claim.

IT IS SO ORDERED.

ENTER:

*Charles R. Norgle*

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 5-14-07

11